# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Brooks Mcleod,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Nelnet Servicing, LLC,<br><br>　　　　Defendant. | Civil Action No. _____<br><br>**COMPLAINT AND DEMAND FOR**<br><br>**JURY TRIAL** |

## PRELIMINARY STATEMENT

1. This is an action for damages brought by Plaintiff Brooks McLeod, an individual consumer, against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the Telephone Consumer Protection Act, 47 U.S.C. 227 *et seq.*, and also for damages based on Defendant's false reporting of Plaintiff's credit reports, failures to follow reasonable procedures, and failures to conduct reasonable investigations with respect to such information. This Compliant is for actual, statutory, and punitive damages, plus attorney's fees and costs pursuant to the Fair Credit Reporting Act ("FCRA").

## JURISDICTION

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

3. This action arises out of the Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA").

4. This action arises out of the Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (hereinafter "TCPA").

5. This action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., jurisdiction of this Court arises under 28 U.S.C. § 1331.

6. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resided here, and Defendant transacts business here.

## PARTIES

7. Plaintiff Brooks McLeod (hereinafter "Plaintiff") is a natural person residing in the County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

8. Plaintiff is a "person" as defined by 47 U.S.C. §153 (32).

9. Defendant, Nelnet (hereinafter "Defendant"), is a Foreign Limited Liability Company, organized under the Laws of Nebraska, with a principal place of business 121 South 13th Street, Lincoln, NE 68508 and registered office address of: 8020 Excelsior Drive #200, Madison, MN 53717.

10. Defendant is engaged in the collection of debts from consumers using the mail and telephone. Defendant regularly attempts to collect consumer debts alleged to be due to another. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

11. Defendant is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

12. Defendant uses an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

13. On or about July 16, 2010 Plaintiff's information was used without his permission by an ex-girlfriend (Kim Metz) to incur a financial obligation via the Direct Loans program with the United States Department of Education, which is a creditor as that term is defined by 15 U.S.C. § 1692a(4).

14. The alleged obligation was primarily for personal, family or household purposes, which is an alleged "debt" as that term is defined by 15 U.S.C § 1692a(5), namely a consumer debt.

15. Sometime on or before May 2015, the alleged debt was consigned, placed, sold, assigned or otherwise transferred to Defendant for collection from Plaintiff.

16. Sometime in April or May of 2015 Plaintiff became aware that that Nelnet was reporting an account or accounts with a balance(s) due on his credit reports.

17. On or about May 13, 2015, Plaintiff sent Equifax, Experian, and Trans Union letters disputing the account(s) being reported by Defendant.

18. In May 2015, Plaintiff initially believed that the erroneous account(s) belonged to his brother, and disputed the reporting on that basis.

19. Upon information and belief, Equifax, Experian, and Trans Union contacted Defendant with information regarding Plaintiff's May 2015 dispute.

20. Upon information and belief, Defendant verified the disputed account information to Equifax, Experian, and Trans Union.

21. On or about June 25, 2015, Plaintiff again sent Equifax, Experian, and Trans Union dispute letters disputing the account(s) being reported by Defendant.

22. Upon information and belief, Equifax, Experian, and Trans Union contacted Defendant with information regarding Plaintiff's June 2015 dispute.

23. Upon information and belief, Defendant verified the disputed account information to Equifax, Experian, and Trans Union for a second time.

24. On or about July 27, 2015, Plaintiff wrote a letter directly to Defendant disputing the account(s).

25. On or about September 2, 2015 Defendant sent Plaintiff a letter with directions as to how to initiate an identity theft / forgery investigation.

26. On or about September 7, 2015, Plaintiff sent Defendant a letter with additional information regarding his fraud claim, including:

    - A copy of his driver's license
    - A copy of his Social Security card
    - A copy of an Orono Police Department police report
    - Signed Borrower Affidavit of Forgery of Educational Loan Note
    - Signed Certification/Agreement of Cooperation of Identity Theft Claims
    - Copies of old signature examples
    - Written statement indicating the circumstances of the theft/forgery

27. On or about September 21, 2015 Defendant sent Plaintiff a letter indicated, among other things, that "…your documentation did not contain all the information needed in order to process your request for loan discharge…"

28. On or about October 29, 2015, Plaintiff, through counsel, sent a letter by Certified Mail (Article No. 7015 1730 0002 3447 2439) to Nelnet, informing Defendant that he has retained counsel and that Plaintiff was the victim of identity theft. Plaintiff included documentation to support his claim.

29. On or about November 2, 2015, Defendant received Plaintiff's October 29, 2015 letter.

30. On or about November 9, 2015, Defendant wrote directly to Plaintiff with a letter that indicated that "The investigation of your fraud or forgery claim has stopped as a result of the following reason(s):… Signature samples were not submitted as requested by the Financial Crimes Risk Department…"

31. On or about November 11, 2015 Defendant again wrote directly to Plaintiff indicating that "…After careful review of your account, we have submitted a request to all national credit bureaus to remove the invalid trade line(s) from your credit report…"

32. During January, February, March, and April 2016 Plaintiff continued to receive telephone calls on his cellular phone from Defendant. Defendant left a pre-recorded voicemail message after every call.

33. Plaintiff received calls on his cellphone from Defendant (*-***-***-1928) and (*-***-***7858) on the following dates:

    a. January 26, 2016 at 8:45am

    b. February 5, 2016 at 3:20pm

    c. February 15, 2016 at 8:45am

5

    d. February 16, 2016 at 8:50am

    e. February 26, 2016 at 8:28am

    f. March 7, 2016 at 8:57am

    g. March 17, 2016 at 11:47am

    h. March 28, 2016 at 1:55pm

    i. April 6, 2016 at 1:47pm

34. During January, February, March, and April 2016 Plaintiff continued to receive Student Loan Account Statements from Defendant indicating balances due, and payment instructions.

35. On or about March 23, 2016, Plaintiff, through counsel, contacted Defendant by telephone. Plaintiff's counsel spoke with "Tom" who indicated that he could not share any information about Plaintiff's account without a signed Authorization Form.

36. On or about March 23, 2016, Plaintiff provided Defendant with a signed Authorization Form granting permission to Defendant to speak with Plaintiff's counsel.

37. On or about March 30, 2016, Plaintiff's counsel received a phone call from Defendant's employee "Eric Rodriguez." Mr. Rodriguez indicated that the loans had been "written-off" and that a letter would be sent with that information.

38. Plaintiff continued to receive calls from Defendant, on his cell phone, from an automated dialer.

39. On or about April 7, 2016, Plaintiff, through counsel, called Defendant and spoke with "Desire." Plaintiff's counsel asked Desire about the status of Plaintiff's disputed accounts / fraud investigation. Desire indicated that although Defendant had received a "verbal OK" from the Department of Education on the fraud claim, they needed a "final confirmation" before the accounts could be zeroed-out or written-off.

40. On the same April 7, 2016 call, Plaintiff's counsel asked Defendant's employee "Desire" if the calls from Defendant to Plaintiff could be stopped. Desire indicated that no, the calls could not be stopped at that time. Desire indicated that if Defendant stopped the calls by "placing some note of assistance" on the account, Plaintiff, by that request, would be accepting liability for the fraudulent accounts.

41. By writing to and calling Plaintiff directly, Defendant violated the FDCPA by communicating with a consumer who Defendant knew was represented by an attorney. 15 U.S.C § 1692c(a)2.

42. Defendant violated 47 U.S.C. 227(b)(1)(A) by calling Plaintiff's cellular telephone using an automatic telephone dialing system.

43. Plaintiff has incurred actual damages in the forms of anxiety, diminished work performance, sleeplessness, extreme concern about the damage to his credit rating, as well as, other forms of emotional distress.

44. Plaintiff has incurred actual damages under the FDCPA in the form of out-of-pocket expenses, such as, attorney's fees, as a result of Defendant's acts and omissions.

## Respondeat Superior Liability

45. The acts and omissions of Defendant's employees who were employed as agents by Defendant, and who communicated with Plaintiff as more fully described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant.

46. The acts and omissions by Defendant's employees were incidental to, or of the same general nature as, the responsibilities the agents were authorized to perform by Defendant in collecting consumer debts.

47. By committing these acts and omissions against Plaintiff, Defendant's employees were motivated to benefit their principal, Defendant.

48. Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Minnesota law, in its attempts to collect this alleged debt from Plaintiff.

## TRIAL BY JURY

49. Plaintiff is entitled to and hereby demands a trial by jury. US CONST. Amend. 7. FED. R. CIV. P. 38.

## CAUSES OF ACTION

## COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 ET SEQ.

50. Plaintiff incorporates by reference each and every above stated allegation as though fully stated herein.

51. The foregoing acts of the Defendant constitute distinct violations of the FDCPA against the Plaintiff herein, including but not limited to each and every one of the above cited provisions of the FDCPA, 15 U.S.C § 1692 *et. seq*.

52. As a result of said violations, Plaintiff has suffered actual damages in the form of anxiety, diminished work performance, sleeplessness, extreme concern about the damage to his credit rating, as well as, other forms of emotional distress, amongst other negative emotions, and therefore Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1) of the FDCPA.

53. As a result of said violations, Plaintiff has incurred out-of-pocket expenses, and therefore Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1) of the FDCPA.

54. As a result of said violations, Plaintiff is entitled to statutory damages of $1,000.00 from Defendant, and for Plaintiff's attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(2)(A) and 15 U.S.C. § 1692k(a)(3).

### COUNTS II & III.

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227, ET SEQ.

55. Plaintiff incorporates by reference each and every above stated allegation as though fully stated herein.

56. At all times relevant hereto, Defendant used, controlled and or operated "automatic telephone dialing systems" as defined by § 227(a)(1) of the TCPA.

57. The foregoing acts and omissions of Defendant constitute negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 *et seq.*

58. As a result of Defendant's negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

59. The foregoing acts and omissions of Defendant constitute knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 *et seq.*

60. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to treble damages, up to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT IV.

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)**

61. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

62. Defendant willfully and/or negligently violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of the Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or by failing to appropriately report the results of their investigations, and/or by failing to appropriately modify, delete, and/or block the information.

63. As a result of said Defendant's violations of § 1681s-2(b), Plaintiff has suffered actual damages not limited to credit denials/delays, increased cost of credit, out-of-pocket expenses, detriment to his credit rating, and emotional distress. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. §§ 1681n and 1681o.

64. Said Defendant's actions and omission were willful, rendering them liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

65. Plaintiff is entitled to recover costs and attorney's fees from Defendant pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court enter the following judgment, in Plaintiff's favor:

### COUNT I: FDCPA VIOLATIONS

- For declaratory that Defendant's conduct violated the FDCPA and injunctive relief;

- For an award of statutory damages of $1,000.00 for the Plaintiff herein, for violations of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A), against Defendant;

- For an award of costs and reasonable attorneys' fees under the FDCPA pursuant to 15 U.S.C. § 1692k(a)(3), against Defendant, for Plaintiff herein;

- For an award of actual damages, costs and reasonable attorney fees pursuant to 15 U.S.C. §1692k(a)(1) against Defendant herein in an amount to be determined at trial; and

- For such other and further relief as may deem just and proper.

## COUNTS II & III: TCPA VIOLATIONS

- As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and request $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3).

- As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and request $1,500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3).

- Any and all other relief that the Court deems just and proper.

## COUNT IV: FCRA VIOLATIONS

- Plaintiff's actual damages;

- Punitive and/or statutory damages pursuant to 15 U.S.C. § 1681n;

- Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

- Such other and further relief as may be just and proper.

Dated:  August 9, 2016               **MARSO & MICHELSON, P.A.**

By:   s/Marcus J. Hinnenthal

Marcus J. Hinnenthal (Bar No: 0386756)
Attorney for Plaintiff
Marso & Michelson, P.A.
3101 Irving Avenue South
Minneapolis, Minnesota
Telephone: 612-821-4817
Fax: 612-821-4826
Email: mhinnenthal@marsomichelson.com